UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-00083-JAW-5 |
| | ) | |
| JAMES PROUDFOOT, | ) | |
| a/k/a "REGGIE" | ) | |

**ORDER ON MOTION TO FORFEIT BAIL**

The Government moves to forfeit the Defendant's bail and appearance bond based on his continued use of marijuana, a new criminal charge for sale of marijuana, the failure to appear at two scheduled Rule 11 hearings, his disappearance, and his resisting arrest. The Court concludes that the Defendant's marijuana use and criminal charge would not justify forfeiting the bail but his failure to appear at two scheduled hearings, his subsequent disappearance, and his resisting arrest, separately and in combination, justify the requested bail forfeiture.

## I. FACTS AND PROCEDURAL HISTORY

James Proudfoot was indicted on May 17, 2012, for "knowingly and intentionally conspir[ing] with . . . persons known and unknown to commit offenses against the United States, namely, distribution and possession with intent to distribute 500 grams or more of a mixture or substance containing cocaine, a Schedule I controlled substance, and a mixture or substance containing oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code,

Sections 846 and 841(a)(1)." *Indictment* at 1-2 (ECF No. 1).[1] An arrest warrant was issued the following day, *Arrest Warrant* (ECF No. 24), and Mr. Proudfoot was arrested on May 30, 2012, in the Southern District of New York.

The same day, Mr. Proudfoot appeared in the Southern District of New York and was released on conditions, including Standard Condition 1, which required that the defendant "not violate federal, state, or local law while on release," and Additional Condition 7(m), which required that the defendant "not use or unlawfully possess a narcotic drug or other controlled substances . . . ." *Rule 5(c)(3) Docs.* Attach 7 *Order Setting Conditions of Release* (ECF No. 190-7).

On June 8, 2012, Mr. Proudfoot appeared in the District of Maine and pleaded not guilty before the Magistrate Judge. *Minute Entry* (ECF No. 173). The Magistrate Judge entered his plea and ordered Mr. Proudfoot's continued release, subject to an Order Setting Conditions of Release. *Order Setting Conditions of Release* (ECF No. 175) (*Conditions of Release*). The Conditions of Release included: Standard Condition 1; Additional Condition 7(a), stating "[t]he defendant must submit to supervision by [the U.S. Probation Office] and report for supervision [a]s directed"; and other standard and additional terms of release. *Id.* at 1-2. Additional Condition 7(m)—the prohibition against using or possessing a narcotic drug—was not checked as one of the conditions that "defendant's release is subject to [ ]." *Id.* at 2.

---

[1] On August 16, 2012, a federal grand jury issued a superseding indictment against Mr. Proudfoot. *Superseding Indictment* (ECF No. 241). That indictment did not modify the charge but became the operative pleading and is the indictment to which he ultimately pleaded guilty. *See Minute Entry* (ECF No. 780).

2

As a condition of release, Mr. Proudfoot was ordered to execute an Appearance Bond in the amount of $100,000. *Minute Entry* (ECF No. 173); *see Conditions of Release* at 1-2 ("The defendant must sign an Appearance Bond, if ordered"; "[d]efendant to sign any necessary paperwork to assist the Government in the transfer of the $10,000.00 bond to the District of Maine"). Mr. Proudfoot executed an Appearance Bond of $100,000 on June 8, 2012, secured by "$10,000 cash/property." *Appearance Bond* (ECF No. 176) (*Bond*). The bond stated in part:

> I, James Proudfoot (defendant), agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail: to appear for court proceedings; if convicted, to surrender to serve a sentence that the court may impose; or to comply with all conditions set forth in the Order Setting Conditions of Release.

*Bond* at 1-2 (signed "J. Proudfoot"). The Appearance Bond contained a forfeiture provision, which stated in part: "The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement." *Id.* at 1. On August 3, 2012, the Magistrate Judge granted Mr. Proudfoot's motion to amend bail, reducing the amount of cash security to $6,000. *Order Granting Without Obj. Mot. to Amend as to Def.* (ECF No. 224).

On June 24, 2013, the Government moved the Court to declare, pursuant to Rule 46(f)(1) of the Federal Rules of Criminal Procedure, "a forfeiture of the secured and unsecured bail that was posted to secure Defendant's compliance with the

conditions of release ordered in this case."[2] *Am. Mot. to Forfeit Bail* (ECF No. 763) (*Gov't's Mot.*); *see* FED. R. CRIM. P. 46(f)(1) ("The court must declare the bail forfeited if a condition of the bond is breached"). The Government alleges multiple violations of Mr. Proudfoot's bail conditions under Rule 46(f)(1), and further submits that this Court "has granted the forfeiture of a defendant's bond under similar circumstances." *Gov't's Mot.* at 4 (citing *United States v. Mattero*, 752 F. Supp. 2d 78 (D. Me. 2010)).

Mr. Proudfoot responded on July 31, 2013, asking the Court to "deny[] the government's request for forfeiture of bail or, in the alternative, set[] aside in whole any forfeiture it may order. *Resp. to Gov't's Mot. to Forfeit Bail* (ECF No. 773) (*Def.'s Opp'n*). Mr. Proudfoot provided facts as to each incident mentioned by the Government, and "avers that the proffered violations of bail by Defendant allow the Court, in the interest of justice, to set aside any mandated forfeiture." *Id.* at 2 (quoting FED. R. CRIM. P. 46(f)(2) ("The court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: . . . (B) it appears that justice does not require bail forfeiture")). Mr. Proudfoot argues that the Court should apply Rule 46(f)(2)(B) according to the rubric set forth in *United States v. Teodoro Gonzalez*, 452 F. App'x. 844 (11th Cir. 2011), under which Mr. Proudfoot argues that his "behaviors easily support[] the exercise of the Court's discretion in ordering the remittitur of any bail forfeiture." *Def.'s Opp'n* at 2. Mr. Proudfoot entered a

---

[2] The Government originally filed a motion to forfeit bail on June 24, 2013. *Gov't's Mot. to Forfeit Bail* (ECF No. 733). On July 23, 2013, the Government filed an amended motion. *Gov't's Mot.* The original motion was terminated on the day the amended motion was filed; the Court treats the amended motion as the operative pleading.

4

plea of guilty before the Court on August 1, 2013. *Minute Entry* (ECF No. 780). Immediately thereafter, the Court held oral argument on the Government's motion. *Id.*; *see Notice of Hr'g on Gov't's Mot.* (ECF No. 766).

## II. DISCUSSION

The Government asserts that Mr. Proudfoot's bail should be revoked and forfeited due to multiple violations of his bail conditions. *Gov't's Mot.* at 4. Mr. Proudfoot does not dispute many of the facts put forth by the Government but provides additional facts upon which he argues that bail should not be revoked and forfeited; in the alternative, if the Court finds that Mr. Proudfoot breached his bail conditions, he asks the Court to set aside the bail forfeiture under Federal Rule of Criminal Procedure 46(f)(2). *Def.'s Opp'n* at 1-3.

### A. Legal Standards

Rule 46(f) of the Federal Rules of Criminal Procedure applies to bail forfeitures and contemplates a two-step process: (1) whether a bail condition was breached; and (2) whether, despite the breach, justice requires a forfeiture. FED. R. CRIM. P. 46(f). Regarding the first step, subpart one provides that "[t]he court must declare the bail forfeited if a condition of the bond is breached." *Id.* 46(f)(1). Here, the Government has demonstrated and Mr. Proudfoot has effectively conceded that he violated some bail conditions. Thus, the Government has satisfied the first step in the bail forfeiture analysis. The focus turns to the second step—whether, despite the breach, justice requires forfeiture. FED. R. CRIM. P. 46(f)(2).

5

Under the analysis in *United States v. Mattero*, 752 F. Supp. 2d 78 (D. Me. 2010), the Government argues that the Court should not set aside the bail forfeiture. In *Mattero*, the Court summarized and applied the four factors that the First Circuit adopted in *United States v. Donlon*, 909 F.2d 650, 657 (1st Cir. 1990), which serve to determine whether "justice does not require bail forfeiture." *Mattero*, 752 F. Supp. 2d at 80-82. Those factors are:

(1) the willfulness of the defendant's breach of conditions;

(2) the participation of the sureties in apprehending the defendant;

(3) the cost, inconvenience and prejudice suffered by the government as a result of the defendant's breach; and

(4) any explanation or mitigating facts.

*Mattero*, 752 F. Supp. 2d at 80-81 (quoting *Donlon*, 909 F.2d at 657).[3] In essence, the Government argues that Mr. Proudfoot engaged in five episodes which pursuant to *Mattero* require his bail to be revoked and forfeited under Rule 46.

## B. Alleged Bail Violations

### 1. Defendant's Possession of Marijuana

In her June 8, 2012 Order Setting Conditions of Release, the Magistrate Judge imposed Standard Condition 1, that Mr. Proudfoot not "violate federal, state, or local law while on release." *Conditions of Release* at 1. The Release form contains a more specific provision addressing the use of marijuana:

---

[3] Although the record is not crystal clear, the Court assumes that the source of the $6,000.00 is Mr. Proudfoot. Mr. Proudfoot says that Ebony Davis, his fiancé, posted $10,000 cash bail after he was arrested in Massachusetts and later in New York. *Def.'s Opp'n* at 1. After the bail amount was reduced to $6,000, Ms. Davis transferred a portion of the Massachusetts bail to the District of Maine. *Id.* Mr. Proudfoot does not argue that the cash belongs to his fiancé and the Court therefore assumes that he has standing to object to the motion for forfeiture. *See Donlon*, 909 F.2d at 657. In any event, as will be seen, Ms. Davis participated in Mr. Proudfoot's bail violations.

6

> The Defendant must: (m) not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. This provision does not permit the use of marijuana even with a prescription, without further permission of the Court or probation officer.

*Id.* at 2 (Condition 7(m)). As noted earlier, the Magistrate Judge did not check the box for Condition 7(m). Despite this fact, the Government argues that Mr. Proudfoot's possession and repeated use of the drug is a criminal offense under 21 U.S.C. § 844(a), and that he therefore violated Standard Condition 1.[4] *Gov't's Supplement to Am. Mot. to Forfeit Bail* at 1-2 (ECF No. 782) (*Gov't's Supp.*). In support of its claim, the Government lists six instances in which Mr. Proudfoot tested positive for marijuana while on conditional release between July 16, 2012 and May 13, 2013. *Gov't's Mot.* at 3.

Section 844(a) of title 21 criminalizes the knowing or intentional possession of a controlled substance, including marijuana. A violation under § 844(a) committed by a person with a past conviction for a state or federal drug offense is a criminal offense punishable by a term of imprisonment of not less than fifteen days and not more than two years, 21 U.S.C. § 844(a), and the Government has provided evidence that Mr. Proudfoot has a prior conviction for a New York state drug offense.[5] *Gov't's Supp.* Attach *1 Certificate of Disposition Indictment* (ECF No. 782-

---

[4] The Government originally claimed that the Defendant violated Condition 7(m). *Gov't's Mot.* at 1-2. However the Magistrate Judge did not check box 7(m) in her Order Setting Conditions of Release, and the Court concludes that this condition did not apply to Mr. Proudfoot. The question that remains is whether his use of marijuana violated Standard Condition 1 against new criminal conduct.

[5] 21 U.S.C. § 844(a) states, in relevant part:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance . . . . Any person who violates this subsection may be sentenced to a term

7

1); *see also Information Charging Prior Conviction* (ECF No. 219) ("At the time of the commission of the [instant offense], the defendant . . . had been convicted of . . . [o]ne count of Criminal Sale of a Controlled Substance in the 4th Degree, a Class C felony, in violation of New York Penal Law §220.34").

Mr. Proudfoot does not dispute that he used marijuana while on conditional release. *Def.'s Opp'n* at 1. In response, he provides mitigating information, including that he had a six month period of abstinence before the most recent positive test results, that his recent relapse was due to the "pressure of his impending plea and certain period of incarceration," and that "though not to minimize his transgression, he used marijuana for his anxiety and did not resort to significantly more worrisome illicit drugs." *Id.*

From the Court's perspective, Mr. Proudfoot's use of marijuana, although not commendable, should not be grounds for forfeiting his bail. The reason is that the Magistrate Judge's Order Setting Conditions of Release did not mark the condition box that addressed marijuana. In light of the absence of a specific prohibition in the

---

of imprisonment of not more than 1 year, and shall be fined a minimum of $1,000, or both, except that if he commits such offense after . . . a prior conviction for any drug, narcotic, or chemical offense chargeable under the law of any State, has become final, he shall be sentenced to a term of imprisonment for not less than 15 days but not more than 2 years, and shall be fined a minimum of $2,500, except, further, that if he commits such offense after . . . two or more prior convictions for any drug, narcotic, or chemical offense chargeable under the law of any State . . . he shall be sentenced to a term of imprisonment for not less than 90 days but not more than 3 years, and shall be fined a minimum of $5,000.

Although 21 U.S.C. § 844a(a) states that knowing possession of a controlled substance in "a personal use amount shall be liable to the United States for a civil penalty," this provision is not applicable to Mr. Proudfoot because 844a(c) states "[a] civil penalty may not be assessed under [Section 844a] if the individual previously was convicted of a Federal or State offense relating to a controlled substance."

bail conditions, Mr. Proudfoot's use of marijuana could well have subjected him to a civil penalty but for his prior felony conviction; here, the trigger that transformed Mr. Proudfoot's conduct from a civil violation to a federal felony was a prior conviction. Even though his conduct in view of his prior conviction was ill-considered, applying the *Donlon* factors, the Court does not find that justice would be served by forfeiting his bail on this basis alone.

### 2. Defendant's Alleged Sale of a Controlled Substance

Mr. Proudfoot was arrested on October 27, 2012, and charged with the New York State offense of criminal sale of a controlled substance (marijuana), and at oral argument, the Government suggested that this incident is a bail violation of the condition not to violate state, federal, or local law. *Gov't's Mot.* at 3. Mr. Proudfoot responded that "it is [defense counsel's] understanding that this charge is being dismissed by the state of New York." *Def.'s Opp'n* at 1.

On December 4, 2013, Mr. Proudfoot appeared before the Court for a presentence conference. *Minute Entry* (ECF No. 944). Before the presentence conference, Ebony Davis wrote the Court and enclosed what appears to be a court record from the Criminal Court of the City of New York, which seems to confirm that the criminal charge arising out of the October 27, 2012 arrest has been dismissed. Although the Government expressed some skepticism about the authenticity of the document, for purposes of this motion, the Court assumes its accuracy and concludes that the new criminal charge has been dismissed.

The Government maintains that, even if the criminal charge has been dismissed, the Court should consider the conduct underlying the dismissed charge and conclude that justice requires the bail to be forfeited. Again, although the Court presumably could consider acquitted conduct in determining whether justice requires forfeiture, here the evidence of Mr. Proudfoot's actual conduct on October 27, 2012 is scant, essentially saying that he sold marijuana to someone but giving no suggestion as to why the New York prosecutor declined prosecution. *See Gov't's Mot.* at 3. In view of the paucity of evidence and the dismissal of the charges, the Court concludes that justice would not be served by forfeiting bail on this basis.

### 3. Failure to Appear at Rule 11 Hearing

The Government's third alleged violation of bail is Mr. Proudfoot's failure to appear at two scheduled change of plea hearings. *Id.* at 3-4. The Magistrate Judge imposed the general condition that Mr. Proudfoot "must appear in court as required." *Conditions of Release* at 1. In signing the Defendant's Acknowledgement, Mr. Proudfoot also promised "to appear as directed." *Id.* at 3.

The circumstances surrounding Mr. Proudfoot's failures to appear are not encouraging. Mr. Proudfoot was indicted on May 17, 2012, *Indictment* (ECF No. 1), and he was arrested on May 30, 2012. After he was released on bail and after some continuances, the case was set for trial for May 7, 2013. *Trial List* (ECF No. 591). On April 23, 2013, Mr. Proudfoot moved to continue the trial on the ground that he was going to enter a plea of guilty, *Mot. to Continue Off May Trial List* (ECF No. 665), and the Court granted the motion on May 7, 2013. *Speedy Trial Order* (ECF

10

No. 671). The change of plea hearing occurred on May 23, 2013; however, after Mr. Proudfoot displayed confusion and hesitancy about the potential sentence, the Court did not accept the guilty plea. *Minute Entry* (ECF No. 691).

At defense counsel's request, the case was rescheduled for a guilty plea for May 31, 2013. *Notice of Hr'g* (ECF No. 692). However, Mr. Proudfoot failed to appear at the May 31, 2013 Rule 11 hearing. Mr. Proudfoot apparently informed his attorney that he had missed the bus from New York City to Maine. *Gov't's Mot.* at 3. The Court reset the Rule 11 hearing for June 5, 2013. *Notice of Hr'g* (ECF No. 705). Again, for reasons that remain unclear, Mr. Proudfoot failed to appear. *Minute Entry* (ECF No. 718); *Gov't's Mot.* at 4. After the aborted Rule 11 hearing on June 5, 2013, the Government sought and obtained an arrest warrant for violating conditions of his release, specifically because of his then pending criminal charge. *Arrest Warrant* (ECF No. 717). Even though the case was reset for trial, Mr. Proudfoot was not located. *Gov't's Mot. to Continue Trial and to Remove Case from Trial List Until Def. is Located* (ECF No. 731). Mr. Proudfoot was arrested in New York City on June 25, 2013. *Arrest Warrant Returned* (ECF No. 735).

The language of the bail condition raises the question of whether the defendant is "required" to appear at a hearing that has been scheduled at his request to enter a guilty plea. The question is complicated by the fact that a defendant is never required to enter a guilty plea. In this sense a Rule 11 hearing is different than other types of hearings, such as a trial, that the Court has scheduled at its own instance and at which his presence is essential. Of course,

11

even if a defendant has elected not to enter a guilty plea, it is decidedly unwise for him simply not to show up at the scheduled hearing—at least without a convincing excuse, and missing the bus is not on its face much of an excuse. But it stretches the bail condition language to conclude that the failure to appear at a voluntarily-scheduled hearing is a failure to appear at a required hearing and justifies the forfeiture of bail conditions.

In addition to the bail conditions, however, Mr. Proudfoot executed an Appearance Bond. *Appearance Bond* (ECF No. 176). The critical language in the appearance bond reads:

> I, JAMES PROUDFOOT *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:
>
> to appear for court proceedings[.]

*Id.* at 1. The language in the Appearance Bond is unequivocal. The two Rule 11s, though voluntarily scheduled at Mr. Proudfoot's behest, were undoubtedly "court proceedings" to which Mr. Proudfoot expressly agreed to appear on pain of bail forfeiture.

The *Donlon* factors contemplate that the Court will examine the willfulness of the defendant's breach of conditions, the cost and inconvenience to the Government, and any explanation or mitigating factors. *Donlon*, 909 F.2d at 657. Here, the Court finds that Mr. Proudfoot's failure to appear at the two scheduled Rule 11 hearings was willful. To miss a bus once may be a mistake; to miss twice is more likely deliberate. The Court reaches this conclusion in part by the

circumstances around the June 5, 2013 non-appearance. According to Probation Officer Oswald, Mr. Proudfoot told his attorney that he had gotten on the bus and was heading to Maine. *Gov't's Mot.* at 4. Probation Officer Oswald confirmed that the bus had arrived from New York City on schedule but that Mr. Proudfoot was not a passenger. *Id.* Furthermore, as will be described, Mr. Proudfoot then avoided contact with his New York pretrial services officer and ultimately, when tracked down, resisted arrest. These combined facts satisfy the Court that Mr. Proudfoot's failure to appear at the two scheduled Rule 11s was willful without any legitimate explanation or extenuating circumstance. Finally, it is imperative that people scheduled for court hearings appear as scheduled. Mr. Proudfoot's attorney, the prosecutor, the probation officer, court personnel, the court reporter, court security, the United States Marshal, and the Court itself were all prepared to proceed with the Rule 11 on both May 31, 2013 and June 5, 2013. The cost and inconvenience to the court system as a whole is obvious.

The Court concludes that by failing to appear at the two scheduled Rule 11s, Mr. Proudfoot breached his promise in the Appearance Bond without any good excuse and that the bail must therefore be forfeited.

### 4. Failure to Cooperate with Pretrial Services and Defendant's Actions at the Time of Arrest

The last two bases for the Government's motion are interrelated and reveal egregious violations of the bail conditions. After Mr. Proudfoot elected not to appear at either the May 31, 2013 or June 5, 2013 Rule 11 hearings, Mr. Proudfoot essentially dropped out of pretrial supervision. *Gov't's Mot.* at 4. As of June 24,

13

2013, his Pretrial Services Officer Christina Feo of the Southern District of New York reported that she had not heard from Mr. Proudfoot and had not had any contact with him. *Id.* Officer Feo had left repeated messages with Mr. Proudfoot's girlfriend in an attempt to locate him, but none of the messages had been returned. *Id.* In addition, according to Mr. Proudfoot's attorney, there had been no contact between Mr. Proudfoot and his attorney since shortly before the scheduled court appearance on June 5, 2013. *Id.* The Government concluded that as of June 24, 2013, Mr. Proudfoot's whereabouts were unknown. *Id.*

On June 25, 2013, Deputy United States Marshals D'Alessandro, Harrison, Betancur, Mendez, and Supervisory Deputy Karoly went to Mr. Proudfoot's girlfriend's Bronx apartment to attempt to arrest Mr. Proudfoot. *Gov't's Ex. List* at Ex. 2 *Report of Investigation, U.S. Dep't of Justice* (ECF No. 781). The report states:

> DUSMs knocked and announced multiple times and spoke to neighbors to confirm PROUDFOOT was staying at the location. The residents failed to answer the door in a timely manner. DUSMs were able to hear voices from the apartment and were able to see movement from underneath the door. DUSM on perimeter was also able to see movement inside the apartment. DUSMs breached the door at approximately 0640. PROUDFOOT[']s girlfriend came out of the back bedroom and told DUSMs that PROUDFOOT was not in the residence. After a room to room search DUSMs found PROUDFOOT in his girlfriend's son[']s bedroom in the back of a closet, hiding behind plastic storage containers. PROUDFOOT failed to obey commands from the DUSMs to show his hands. After PROUDFOOT resisted arrest DUSMs were able to subdue him by deploying a PSG X26 Taser. One prong made contact with PROUDFOOT and a drive stun was used to complete the circuit. Physical manipulation of PROUDFOOT['s] arms were used to handcuff him and he was taken into custody.

*Id.* at 1.

Although Mr. Proudfoot's failure to appear in Maine for the scheduled Rule 11s, charitably viewed, would not require forfeiture, his willful disappearance from pretrial supervision, his hiding from arresting officers and his resisting arrest are clear violations of the conditions underlying his pretrial release and mandate forfeiture of his cash bail. Applying the *Donlon* factors, the Court finds that Mr. Proudfoot's breach of these conditions was in fact willful in the extreme. *Mattero*, 752 F. Supp. 2d at 80-81 (quoting *Donlon*, 909 F.2d at 657). The Marshal Service sent no fewer than five Marshals to apprehend Mr. Proudfoot and it was a good thing they came in numbers. Proudfoot has offered no legitimate explanation or mitigating circumstance for his disappearance, his hiding, and his resistance of arrest and the Court can conceive of none. *See id.* at 81 ("[the defendant]'s return to custody is overshadowed by the manner of his capture; [the defendant] was taken into custody not because of his change of heart . . . ."). Finally to the extent Ms. Davis acted as Mr. Proudfoot's surety in putting up the cash, she actively participated in a ruse to attempt to sidetrack the Marshals. *See id.* at 81-82.

The facts make clear that Mr. Proudfoot has committed multiple violations of his bail conditions, which trigger the forfeiture provision in his appearance bond and applying the *Donlon* factors, the Court concludes that there is no "legitimate defense against the forfeiture of [his] bail bond." *Mattero*, 752 F. Supp. 2d at 82 (quoting *United States v. Lunn*, 519 F. Supp. 2d 145, 148 (D. Me. 2007)). As the Court stated in *Mattero*, "[i]t is the prospect of judicial enforcement of the bail conditions and the resultant financial harm to the surety that remain strong

15

incentives to keep defendants in compliance." 752 F. Supp. 2d at 82. The Court declares Mr. Proudfoot's $100,000 bond—$6,000 secured by cash and the remainder unsecured—forfeited in whole.

## III. CONCLUSION

The Court GRANTS the United States' Amended Motion to Forfeit Bail (ECF No. 763).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of December, 2013